No. 21-12355

# In the United States Court of Appeals for the Eleventh Circuit

NETCHOICE, LLC, ET AL.,
*Plaintiffs-Appellees*,

V.

ATTORNEY GENERAL, STATE OF FLORIDA, ET AL.,
*Defendants-Appellants*.

On Appeal from the United States District Court
for the Northern District of Florida
No. 4:21-cv-220-RLH

**RESPONSE IN OPPOSITION TO
MOTION FOR SUPPLEMENTAL BRIEFING**

CHARLES J. COOPER
DAVID H. THOMPSON
BRIAN W. BARNES
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

ASHLEY MOODY
  *Attorney General of Florida*
HENRY C. WHITAKER
  *Solicitor General*
DANIEL W. BELL
  *Chief Deputy Solicitor General*
KEVIN A. GOLEMBIEWSKI
  *Deputy Solicitor General*
DARRICK W. MONSON
  *Assistant Solicitor General*
PL-01, The Capitol
Tallahassee, FL 32399-1050
(850) 414-3300
henry.whitaker@myfloridalegal.com

August 12, 2024

*Counsel for Appellants*

*NetChoice v. Moody*
*Eleventh Circuit Case No. 21-12355*

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Appellants certify that, to the best of their knowledge, the list of interested persons included with Appellees' motion is complete, save for the following additions. *See* Fed. R. App. P. 26.1; 11th Cir. R. 26.1-2(c).

1. Baum, Christopher J.

2. DeSousa, Jeffrey Paul

3. Golembiewski, Kevin A.

4. Monson, Darrick W.

Appellants are not required to file a corporate disclosure statement. *See* Fed. R. App. P. 26.1(a).

# RESPONSE IN OPPOSITION TO
# MOTION FOR SUPPLEMENTAL BRIEFING

NetChoice "propose[s] that the parties submit" 27,000 words of "supplemental brief[ing]" over two months on "whether this Court can resolve [NetChoice's] facial challenge on this record," "whether the preliminary injunction should remain in effect," and "the import of the Supreme Court's decision." Mot. 3–4. That is unnecessary. Under the Supreme Court's decision, this case must be remanded to the district court because the record is "underdeveloped" and "incomplete," lacking the evidence necessary to pass on the preliminary injunction. *Moody v. NetChoice*, 144 S. Ct. 2383, 2399, 2403 (2024) (explaining that, even if the parties had "briefed" additional "issues," the Court could not reach the merits of NetChoice's request for a preliminary injunction because "the record is underdeveloped"). On remand, the parties can develop a record based on the Supreme Court's guidance, and the district court can apply the guidance in the first instance. Even in cases with an adequate record, it is this Court's standard practice to afford the district court that opportunity after remand from the Supreme Court.

NetChoice's motion should be denied.

1. NetChoice challenges S.B. 7072, which regulates internet platforms that do "business in" Florida and have "annual gross revenues in excess of $100 million" or "at least 100 million monthly individual platform participants globally." Fla. Stat. § 501.2041(1)(g); *NetChoice v. Att'y Gen. of Fla.*, 34 F.4th 1196, 1232 (11th Cir. 2022)

1

(listing the law's twelve regulations). Covered platforms include not only social-networking platforms but also any platforms that "enable[] computer access by multiple users to a computer server" and that also satisfy either the user or revenue threshold. Fla. Stat. § 501.2041(1)(g)1.

2.  In May 2021, two days after S.B. 7072 was enacted, NetChoice brought this facial challenge. Rather than challenging specific regulations as applied to certain internet platforms or functions, NetChoice argued that the entire law is facially invalid because it seeks to "commandeer private parties' speech." Ans. Br. 3, *NetChoice v. Moody*, No. 21-12355 (11th Cir.).

3.  NetChoice moved for a preliminary injunction on an expedited basis, which the district court granted before S.B. 7072 went into effect and before the parties had conducted discovery, universally enjoining Florida from enforcing any of the law's twelve provisions. *NetChoice v. Moody*, 546 F. Supp. 3d 1082, 1096 (N.D. Fla. 2021). On appeal, this Court affirmed in part and vacated in part, concluding that some of the provisions likely failed First Amendment scrutiny but that others likely survived. *NetChoice*, 34 F.4th at 1231. On the parties' joint motion, the Court stayed its mandate, and thus left the district court's entire injunction in place, pending Supreme Court review. DE136.

4.  In July 2024, the Supreme Court "vacate[d]" this Court's "decision[] for reasons separate from the First Amendment merits, because" the decision did not

2

"properly consider[] the facial nature of NetChoice's challenge." *Moody*, 144 S. Ct. at 2394.

5. The Supreme Court explained that NetChoice's decision to "litigate th[is] case[] as [a] facial challenge[] . . . comes at a cost." *Id.* at 2397. Because "facial challenges threaten to short circuit the democratic process by preventing duly enacted laws from being implemented in constitutional ways," "facial challenges [are] hard[er] to win." *Id.* (quotation omitted). In First Amendment cases, the plaintiff must establish that "the law's unconstitutional applications substantially outweigh its constitutional ones." *Id.*

6. But, the Court went on, in the district court and the Eleventh Circuit, "the focus was on how [S.B. 7072] applied to Facebook's News Feed and YouTube's homepage." *Id.* Neither court "address[ed] the full range of activities the law[] cover[s], and measure[d] the constitutional against the unconstitutional applications." *Id.* at 2397–98. Instead, NetChoice's challenge was "treated . . . more like" an "as-applied" challenge than a "facial one[]." *Id.* at 2398. Florida has thus been enjoined from enforcing S.B. 7072 in its entirety for three years despite no showing in the district court that NetChoice is likely to succeed on its facial challenge, as that standard is properly applied.

7. The Court then provided guidance on the proper analysis for determining whether NetChoice is likely to succeed on its facial challenge, but it concluded that on the current record, it could not perform that analysis. *Id.* at 2398–99. Even putting aside that the Supreme Court is a court "of review, not of first view," "the record is

3

underdeveloped," the Court explained. *Id.* at 2399 (quotation omitted). To decide the merits of NetChoice's request for a preliminary injunction, it is necessary to, among other things, "ask[], as to every covered platform or function, whether there is an intrusion on protected editorial discretion." *Id.* at 2398. But "the record is incomplete even as to the major social-media platforms' main feeds, much less the other [platforms and functions] that must now be considered." *Id.* at 2403.

8. In concurring opinions, five Justices emphasized that even at this stage, NetChoice's facial challenge requires a fact-intensive analysis and further record development. *See id.* at 2411 (Jackson, J., concurring in part and in the judgment) ("With these records and lower court decisions, we are not able to adequately evaluate whether the challenged state laws are facially valid."); *id.* at 2435–36 (Alito, J., concurring in the judgment, joined by Thomas and Gorsuch, JJ.) ("NetChoice has not developed the record . . . . [And] [a] court cannot invalidate the challenged laws if it has to speculate about their applications."); *id.* at 2410–11 (Barrett, J., concurring) (stating that the "analysis" of a platform's "functions" is "fact intensive" and requires a "more thorough[]" record, and observing that First Amendment protection of algorithmically presented speech may depend on how the algorithm works).

9. On August 2, 2024, the Supreme Court issued its judgment remanding the case to this Court. Hours later, NetChoice moved for two rounds of supplemental

4

briefing on the appropriate disposition of this appeal, "the import of the Supreme Court's decision," and "other relevant issues." Mot. 3–4.

10. This Court should deny the motion. There is no need for supplemental briefing in this Court, let alone the extensive briefing NetChoice proposes.

11. For the same reason the Supreme Court vacated and remanded, this Court must as well: The record is not adequate to assess the merits of NetChoice's request for an injunction, much less sufficient to meet NetChoice's "burden of production" and "clearly establish[] [its] burden of persuasion as to the four prerequisites" for an injunction. *CBS Broad., Inc. v. EchoStar Comms. Corp.*, 265 F.3d 1193, 1202 (11th Cir. 2001) (quotation omitted); *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) ("[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.").

12. Nor is it appropriate for this Court to wade into the "import of the Supreme Court's decision" and "other relevant issues" in the first instance. Mot. 3–4. For one thing, like the Supreme Court, this is "a court of review, not a court of first view," *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1307 (11th Cir. 2020) (quotation omitted), and the district court has not "performed the" two-step "facial analysis . . . described" in the Supreme Court's decision. *Moody*, 144 S. Ct. at 2399; *see also NetChoice*, 546 F. Supp. 3d at 1093–95. For another, that analysis must "be addressed first by the district court" because it requires fact-finding at both steps. *Callahan v. Dep't of Health*

5

*& Hum. Servs.*, 939 F.3d 1251, 1266 (11th Cir. 2019). For example, determining the "scope" of Florida's law requires findings as to which platforms satisfy the law's revenue and user thresholds. *Moody*, 144 S. Ct. at 2398. And "decid[ing] which of the law[']s] applications violate the First Amendment" requires findings about the "different levels of editorial choice" that each platform's various functions involve. *Id.*

13. Finally, remand to the district court for reconsideration in the first instance is how this Circuit typically proceeds when an intervening Supreme Court decision provides new legal guidance.[1]

14. NetChoice is wrong that "the Supreme Court's decision expressly contemplates additional proceedings in this Court" before a remand to the district court because the decision states that "on remand, each court must evaluate the full scope of the law's coverage." Mot. 4 (quoting *Moody*, 144 S. Ct. at 2409). That statement merely

---

[1] *E.g.*, *Commodores Ent. Corp. v. McClary*, No. 22-10188, 2023 WL 5664170, at *2–3 (11th Cir. Sept. 1, 2023) ("vacat[ing] and remand[ing] so that the district court c[ould] revisit" the issue "in light of the Supreme Court's decision"); *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1228 (11th Cir. 2008) (vacating a preliminary injunction and remanding because the district court "ha[d] not addressed" an intervening Supreme Court decision); *Hill v. McDonough*, 462 F.3d 1313, 1313–14 (11th Cir. 2006) (vacating and remanding after remand from the Supreme Court because "the district court is the appropriate forum" to consider the merits in the first instance); *Lozman v. City of Riviera Beach*, 793 F. App'x 960, 962 (11th Cir. 2019) (similar); *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 797 F.3d 1293, 1294 (11th Cir. 2015) (similar); *Andrews ex rel. C.C. v. Monroe Cnty. Bd. of Educ.*, 427 F. App'x 781, 783 (11th Cir. 2011) (similar); *Larsen v. J.P. Morgan Chase Bank, N.A.*, 438 F. App'x 894, 894–95 (11th Cir. 2011) (similar); *Thompson v. Sec'y for Dep't of Corrs.*, 425 F.3d 1364, 1366 (11th Cir. 2005) (similar).

reiterates the proper facial analysis that must be applied in this litigation moving forward. Elsewhere, the decision is clear that the "underdeveloped" state of the record impelled the Court to "remand th[is] case[]" to "enable the lower courts to consider the scope of the laws' applications," which necessitates a remand to the district court to develop the record that would inform any additional merits briefing in this Court. *Moody*, 144 S. Ct. at 2399. Ordering lengthy additional appellate briefing before that happens, as NetChoice proposes, would put the cart before the horse.

For these reasons, this Court should deny NetChoice's motion and remand to the district court for further proceedings consistent with the Supreme Court's decision. In the alternative, the Court should order limited supplemental briefing addressing only the proper disposition of this appeal. Florida respectfully suggests that no more than 3,000-word briefs, submitted simultaneously, would be necessary.[2]

---

[2] If the Court opts for more extensive briefing, it should adopt a standard briefing schedule, in which Florida submits an initial brief, NetChoice responds, and Florida replies.

Dated: August 12, 2024

CHARLES J. COOPER
DAVID H. THOMPSON
BRIAN W. BARNES
COOPER & KIRK, PLLC
1523 New Hampshire Ave., N.W.
Washington, DC 20036

Respectfully submitted,

ASHLEY MOODY
  *Attorney General of Florida*

*/s/ Henry C. Whitaker*
HENRY C. WHITAKER
  *Solicitor General*
DANIEL W. BELL
  *Chief Deputy Solicitor General*
KEVIN A. GOLEMBIEWSKI
  *Deputy Solicitor General*
DARRICK W. MONSON
  *Assistant Solicitor General*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, Florida 32399
(850) 414-3300

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Garamond font.

*/s/ Kevin A. Golembiewski*
Counsel for Appellants

## CERTIFICATE OF SERVICE

I certify that on August 12, 2024, I electronically filed this document with the Clerk of Court using the Court's CM/ECF system, which will send a notice of docketing activity to all parties who are registered through CM/ECF.

*/s/ Kevin A. Golembiewski*
Counsel for Appellants